UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DIOSVANY SANTOS GARCIA,
Petitioner,

v.

MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD BLANCHE, Acting Attorney General; TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; JESUS ROCHA, Acting Field Office Director, San Diego Field Office; CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,
Respondents.

Case No.: 3:26-cv-04133-LEK-AHG

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before this Court is Petitioner Diosvany Santos Garcia's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"), filed on July 17, 2026. [Dkt. no. 1.] The respondents, identified in the Petition as Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General; Todd M. Lyons, Acting Director, Immigration and Customs Enforcement ("ICE"); Jesus Rocha, Acting Field Office Director, San Diego Field Office; and Christopher LaRose, Warden at Otay Mesa Detention Center (collectively "Respondents"), filed a return to the Petition ("Return") on July 28, 2026. [Dkt. no. 4.] Petitioner filed a traverse in support of the Petition ("Traverse") on July 31, 2026. [Dkt. no. 5.]

On August 12, 2026, this Court issued a minute order directing the parties to file supplemental memoranda ("8/12 Minute Order"). [Dkt. no. 6 at 6-7.] Petitioner filed his supplement in support of the Petition ("Petitioner's Supplement") on August 17, 2026. [Dkt. no. 7.] Respondents filed their supplement in opposition to the Petition ("Respondents' Supplement") on August 26, 2026. [Dkt. no. 8.]

## BACKGROUND

A detailed background of the facts at issue in the instant case is set forth in this Court's 8/12 Minute Order. [8/12 Minute Order at 2-3.] This Court discusses only those facts relevant to resolve the Petition.

Petitioner, a native and citizen of Cuba, entered the United States on December 2, 2019. He was detained after entry and paroled into the United States on a $7,500.00 bond. See 8/12 Minute Order at 2 & n.1; Return at PageID.28 (citing Return, Exh. 1 (DHS Notice to Appear, Form I-862, dated 12/30/19 ("Form I-862")); id., Exh. 4 (U.S. Customs and Border Protection, Arrival/Departure Record, Form I-94, dated 2/10/20); Petition, Exh. A (Declaration of Diosvany Santos Garcia ("Santos Garcia Decl.")) at ¶ 2. On January 8, 2026, an immigration judge ("IJ") in Florida held a removal hearing and ordered that Petitioner be removed *in absentia*. See Respondents' Suppl., Exh. 1 (Order of the Immigration Judge, dated 1/8/26 ("Removal Order")). Petitioner was later arrested by local authorities for unrelated offenses and he was detained at the Turner Guilford Knight Correctional Center in Miami-Dade County, Florida. See Return, Exh. 5 (DHS Record of Deportable/Inadmissible Alien, Form I-213, dated 6/11/26) at 2. On June 9, 2026, Petitioner was re-detained by ICE. [Respondents' Suppl. at 2 & n.1.] ICE officers took Petitioner to a detention center in Florida, and later transferred him to Otay Mesa Detention Center, where he remained through the filing of the Petition. See Petition at PageID.3; id., Exh. A (Santos Garcia Decl.) at ¶ 4.

This Court, relying on Cui v. Garland, 13 F.4th 991 (9th Cir. 2021), previously determined that "[u]nless Petitioner filed a motion to reopen the Removal

Order before the IJ, the Removal Order, which was issued on January 8, 2026, became final on July 7, 2026, *i.e.*, the date that Petitioner's deadline to file a motion to reopen expired." See 8/12 Minute Order at 5. This Court also directed the parties to address, *inter alia*, the following questions:

- Did Petitioner, pursuant to [**Title 8 United States Code] Section 1229a(b)(5)(C)(i)**, file a motion to reopen the Removal Order?

. . . .

- Petitioner and Respondents recognize that Petitioner was released on parole in 2020. . . . Was Petitioner afforded a pre-detention hearing or an individualized determination before he was detained by ICE after his June 9, 2026 arrest? If Petitioner was not afforded such procedural protections, does the Fifth Amendment provide alternate grounds to grant the Petition?

[Id. at 6 (emphasis added).]

Petitioner concedes that, as of the filing of Petitioner's Supplement, he had not filed a motion to reopen the Removal Order. [Petitioner's Suppl. at 2.] Although Petitioner did not previously argue that he did not receive notice concerning the January 8, 2026 removal hearing, see generally Petition; Traverse, Petitioner now claims that he "did not receive notice of the merits hearing at which the in-absentia removal order was issued," see Petitioner's Suppl. at 2. Petitioner contends that this Court mistakenly concluded that the Removal Order became final on July 7, 2026 because, *inter alia*, he asserts that he did not receive notice of the removal hearing and "the determination in Cui that an in-absentia removal order becomes final after the time to file a motion to reopen closes should only apply when a noncitizen is making a claim of exceptional circumstances," and should not apply when a petitioner claims he or she lacked notice of a removal hearing. See id. at 3. Petitioner contends that, pursuant to Title 8 Code of Federal Regulations Section 1241.1(e), the Removal Order became final

on January 8, 2026, *i.e.*, the date it was entered; not July 7, 2026. See id. at 2-3. Accordingly, Petitioner argues that this Court can provide him habeas relief on the grounds originally raised in the Petition. See id. at 1; see also 8/12 Minute Order at 3 ("Petitioner argues his detention violates Zadvydas v. Davis, 533 U.S. 678 (2001) . . . . Petitioner also argues that any attempt by ICE to remove him to a third country would violate, *inter alia*, his Fifth Amendment right to due process . . . ." (citing Petition at PageID.7-14)). In the alternative, Petitioner contends that his re-detention violates his due process rights because he was not provided a pre-detention hearing or an individualized determination before he was re-detained. See Petitioner's Suppl. at 3-5.

Respondents "defer to the Court's conclusion that the *in absentia* removal order became final on July 7, 2026, pursuant to Cui," [Respondents' Suppl. at 2,] and admit that "Petitioner was not provided with a pre-deprivation hearing prior to his re-detention" on June 9, 2026, see id. at 3; id. at 2 & n.1. They contend, however, that Petitioner's Removal Order is final and, as a result, "the issue of whether Petitioner was entitled to a pre-deprivation hearing is now moot" because Petitioner's detention is governed by Title 8 United States Code Section 1231(a). See id. at 3. With respect to Petitioner's Zadvydas argument raised in the Petition, Respondents urge this Court to deny the Petition and contend that "because Petitioner has been in custody for less than 90 days since his removal order became final, this habeas petition is premature." [Return at PageID.27.]

## STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to Title 28 United States Code Section 2241. See 28 U.S.C. § 2241(a); Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. See 8 U.S.C. § 1252(a)(1), (5); see also Alvarez-Barajas v. Gonzales,

418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process - for example, a claim of indefinite detention - federal habeas corpus jurisdiction remains in the district court. See Alvarez v. Sessions, 338 F. Supp. 3d 1042, 1047-48 (N.D. Cal. 2018) (citations omitted); see also Nadarajah v. Gonzales, 443 F.3d 1069, 1076 (9th Cir. 2006).[1]

## DISCUSSION

### I. Finality of Petitioner's Removal Order

#### A. Principles of Statutory Interpretation

The Ninth Circuit, in a recent opinion concerning the Immigration and Nationality Act ("INA"), stated that

> When interpreting a statute, we give statutory terms their plain, ordinary meaning. See, e.g., Wisconsin Cent. Ltd v. United States, 585 U.S. 274, 277, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018); Carcieri v. Salazar, 555 U.S. 379, 387, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009). But "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning." Stenberg v. Carhart, 530 U.S. 914, 942, 120 S. Ct. 2597, 147 L. Ed. 2d 743 (2000). We also read "the words of a statute . . . in their context and with a view to their place in the overall statutory scheme." Trim v. Reward Zone USA LLC, 76 F.4th 1157, 1161 (9th Cir. 2023) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000)); see also Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 7, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011) (explaining that statutory interpretation "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis" (quotations omitted)). That is, we "construe statutes, not isolated provisions."

---

[1] Nadarajah was abrogated on other grounds by Jennings v. Rodriguez, 583 U.S. 281 (2018), as recognized by Esquivel-Ipina v. LaRose, 812 F. Supp. 3d 1073, 1077 (S.D. Cal. 2025).

> Graham Cty. Soil & Water Conservation Dist. v. Wilson, 559 U.S. 280, 290, 130 S. Ct. 1396, 176 L. Ed. 2d 225 (2010) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 568, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995)).
>
> Construing text in context requires consideration of whether the statutory text sustains the interpretation placed upon it, that is, whether the words Congress used are best construed as accomplishing the legal consequence attributed to them. See, e.g., United States v. Tinklenberg, 563 U.S. 647, 655, 131 S. Ct. 2007, 179 L. Ed. 2d 1080 (2011). As the Supreme Court put it, "when Congress wishes to alter the fundamental details of a regulatory scheme . . . we would expect it to speak with the requisite clarity to place that intent beyond dispute." United States Forest Serv. v. Cowpasture River Pres. Ass'n, 590 U.S. 604, 621, 140 S. Ct. 1837, 207 L. Ed. 2d 186 (2020) (quotations omitted). This principle, stated in different ways in different decisions, pervades the Supreme Court's cases involving statutory interpretation. See, e.g., Learning Res., Inc. v. Trump, 607 U.S. 229, 245, 146 S. Ct. 628, 224 L. Ed. 2d 51 (2026) (observing that "Congress seldom effects such sea changes through vague language" (quotations omitted)); Epic Sys. Corp. v. Lewis, 584 U.S. 497, 499, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018) (discussing "the rule that Congress 'does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions'" (quoting Whitman v. Am. Trucking Ass'n, 531 U.S. 457, 468, 121 S. Ct. 903, 149 L. Ed. 2d 1 (2001))); Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 465, 137 S. Ct. 973, 197 L. Ed. 2d 398 (2017) (observing that "if, and when, Congress were to intend a major departure" from prevailing practice, "we would expect to see some affirmative indication" of that intent); Biden v. Nebraska, 600 U.S. 477, 511-17, 143 S. Ct. 2355, 216 L. Ed. 2d 1063 (2023) (Barrett, J., concurring) (explaining that "textualists, like all interpreters," "situate[] text in context," considering "commonsense principles of communication").

Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1171-72 (9th Cir. 2026) (alterations in Rodriguez Vazquez).

> "Regulations are interpreted according to the same rules as statutes, applying traditional rules of construction." Minnick v. Comm'r, 796 F.3d 1156, 1159 (9th Cir. 2015). "Unless a statute provides an explicit

> definition, we generally give words 'their ordinary, contemporary, common meaning.'" Pakootas v. Teck Cominco Metals, Ltd., 830 F.3d 975, 980 (9th Cir. 2016) (quoting Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 958 (9th Cir. 2013)). If the meaning of the text is unambiguous, the regulation must be enforced according to its terms. See King v. Burwell, 576 U.S. 473, 486, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015). But when we are confronted with an ambiguous regulation, we must rifle through our "legal toolkit" and "'carefully consider[]' the text, structure, history, and purpose" of the regulation to derive its meaning. Kisor v. Wilkie, 588 U.S. 558, 575, 139 S. Ct. 2400, 204 L. Ed. 2d 841 (2019) (citing Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 696, 111 S. Ct. 2524, 115 L. Ed. 2d 604 (1991) and then quoting id. at 707, 111 S. Ct. 2524 (Scalia, J., dissenting)); accord Goffney v. Becerra, 995 F.3d 737, 742 (9th Cir. 2021). By relying on these classic tools of statutory interpretation, we "resolve many seeming ambiguities out of the box" and avoid most complicated questions of policy or deference. Kisor, 588 U.S. at 575, 139 S. Ct. 2400.

United States v. Korotkiy, 118 F.4th 1202, 1209-10 (9th Cir. 2024). This action requires this Court to rely on the tools of statutory interpretation to determine when Petitioner's Removal Order became final in light of Petitioner's assertion that he did not receive notice for his January 8, 2026 removal hearing. See Petitioner's Suppl. at 2.

### B. *In Absentia* Removal Orders

> Congress has defined an order of removal as "the order" of the IJ "concluding that the alien is deportable or ordering deportation." [8 U.S.C.] § 1101(a)(47)(A). "The order" then becomes "final upon the earlier of":
>
> > (i) a determination by the Board of Immigration Appeals affirming such order; or
> >
> > (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.
>
> Id. § 1101(a)(47)(B).

Abdisalan v. Holder, 774 F.3d 517, 523 (9th Cir. 2014) (en banc), *as amended* (Jan. 6, 2015) (footnote omitted).

The Board of Immigration Appeals ("BIA") does not have jurisdiction to consider direct appeals of *in absentia* orders in removal proceedings. See Castaneda Medina v. Garland, 849 F. App'x 674, 674 (9th Cir. 2021) ("To be clear, there is no dispute that the [BIA] lacks jurisdiction to hear a direct appeal from an in-absentia removal order." (citing 8 C.F.R. § 1240.15)).[2] Section 1241.1 states, in relevant part: "An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the [INA[3]] shall become final: . . . (e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order[.]"

> An IJ may rescind an *in abstentia* [sic] removal order on a motion to reopen filed within 180 days of the date of the order of removal if the non-citizen demonstrates that the failure to appear was due to "exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(ii) [sic]. An IJ may also reopen removal proceedings **at any time** if the non-citizen demonstrates that (1) he did not receive proper notice of the hearing or (2) was in government custody and not at fault for failing to appear. 8 U.S.C. § 1229a(b)(5)(C)(ii). The filing of a motion to reopen has the effect of staying the removal order pending resolution of the motion by the IJ. Id. If dissatisfied with the IJ's ruling on the motion to reopen, the non-citizen may then seek review by the BIA pursuant to 8 C.F.R. § 1003.3(a)(1). The non-citizen may petition the Court of Appeals for the applicable circuit for review of the BIA's decision, but only if the non-citizen has first exhausted available administrative remedies before the IJ and BIA. 8 U.S.C. § 1252(d). "Any petition for review. . . shall. . . be confined to (i) the

---

[2] Title 8 Code of Federal Regulations Section 1240.15 states in relevant part: "[A]n appeal shall lie from a decision of an immigration judge to the Board of Immigration Appeals, except that no appeal shall lie from an order of removal entered in absentia."

[3] Section 240 of the INA was codified at Title 8 United States Code Section 1229a. Samayoa-Martinez v. Holder, 558 F.3d 897, 900 n.4 (9th Cir. 2009).

> validity of the notice provided to the [non-citizen], (ii) the reasons for the [non-citizen's] not attending the proceeding, and (iii) whether or not the [non-citizen] is removable." 8 U.S.C. § 1229a(b)(5)(D).

Pinedo-Rios v. Bondi, No. 1:26-cv-01982-DJC-SCR, 2026 WL 1078249, at *3 (E.D. Cal. Apr. 21, 2026) (some alterations in Pinedo-Rios) (emphasis added);[4] see also 8 C.F.R. § 1003.23(b)(4)(iii)(A) (providing that "[a]n order entered in absentia in deportation proceedings may be rescinded only upon a motion to reopen filed" and that the motion to reopen must be filed "[w]ithin 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances beyond the control of the alien" or "[a]t any time if the alien demonstrates that he or she did not receive notice"). In Cui, however, the Ninth Circuit Court of Appeals determined that, when a noncitizen seeks reopening of his or her *in absentia* removal order under Section 1229a(b)(5)(C)(i), the order is no longer final on the date of its entry. See 13 F.4th at 996.

The petitioner in Cui failed to appear at her March 4, 2014 merits hearing and was ordered removed by the IJ *in absentia*. See id. at 994. On April 1, 2014, the petitioner's counsel, who replaced the petitioner's former counsel, filed an appeal of the *in absentia* order directly with the BIA. See id. On July 30, 2014, the petitioner's counsel filed a motion to reopen the *in absentia* order before the IJ, citing "'changed circumstances,'" as opposed to "'exceptional circumstances,'" which allegedly prevented the petitioner or her former counsel from attending her March 4, 2014 merits hearing. Id. (quoting 8 U.S.C. § 1229a(b)(5)(C)(i), (e)(1)). The petitioner's July 2014 motion to reopen was rejected by the immigration court clerk because the petitioner's April 1, 2014 appeal before the BIA was pending and the petitioner's counsel failed to file a motion to

---

[4] The magistrate judge's report and recommendation in Pinedo-Rios, 2026 WL 1078249, was adopted by the district judge. 2026 WL 1189187 (Apr. 30, 2026).

substitute the petitioner's former counsel in immigration court. The petitioner did not refile her July 2014 motion to reopen after it was rejected. See id. On October 16, 2015, the BIA returned the petitioner's case to the immigration court after finding that "a motion to reopen before the IJ was the appropriate route to seek reconsideration of an in absentia removal order in Cui's circumstances." Id. (citing 8 U.S.C. § 1229a(b)(5)(C)). The petitioner filed a second motion to reopen the *in absentia* removal order on November 4, 2016, which was denied by the IJ both because it was untimely and it failed to allege exceptional circumstances. The petitioner appealed the denial of the November 2016 motion to reopen, but the BIA affirmed the IJ's decision that the November 2016 motion was untimely and dismissed the action. See id. at 995.

On appeal of the BIA's dismissal, the petitioner argued that "the IJ's in absentia removal order was not final and that she filed a timely motion to reopen." Id. at 996. The Ninth Circuit disagreed and reasoned that

> Because in absentia removal orders may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order, 8 U.S.C. § 1229a(b)(5)(C)(i); In re Guzman-Arguera, 22 I. & N. Dec. [722,] 723 [(BIA 1999)], if the petitioner does **not** timely file such a motion before the IJ the order becomes final at the end of the 180-day period. "[T]he period in which the alien is permitted to seek review of such order by the [BIA]" also expires at that time, id. § 1101(a)(47)(B)(ii), because, while the alien **could have** sought BIA review **after** first exhausting her motion to reopen before the IJ, once the petitioner fails to file a timely motion with the IJ under § 1229a(b)(5)(C)(i), the ability to ultimately appeal to the BIA expires along with the 180-day deadline to seek reopening before the IJ.

Id. (some alterations in Cui). Accordingly, the Ninth Circuit held that, pursuant to Section 1229a(b)(5)(C)(i)'s 180-day deadline to file a motion to reopen with the IJ, the petitioner's *in absentia* removal order became final on August 31, 2014, *i.e.*, 180 days after the petitioner's March 4, 2014 merits hearing. See id.

### C. Application

The facts at issue before this Court are similar, but not identical, to the facts at issue in Cui. Both cases concern *in absentia* removal orders and both cases concern questions about the finality of the *in absentia* removal orders. However, unlike the petitioner in Cui, Petitioner has not filed a motion to reopen the Removal Order. Compare Cui, 13 F.4th at 995, with Petitioner's Suppl. at 2. Also, Petitioner does not contend that exceptional circumstances prevented him from attending the January 8, 2026 removal hearing. Rather, Petitioner claims that he never received notice of the January 8, 2026 removal hearing. Compare Cui, 13 F.4th at 997 n.2, and id. at 1000, with Petitioner's Suppl. at 2-3. If this Court accepts as true Petitioner's allegation that he never received notice of the January 8, 2026 removal hearing, then, pursuant to Section 1229a(b)(5)(C)(ii), Petitioner may file a motion to reopen the Removal Order at any time. See Pinedo-Rios, 2026 WL 1078249, at *3.

Cui, which does not mention Section 1241.1, raises an unanswered question: If an *in absentia* order is final at the end of the 180-day period where no motion to reopen alleging exceptional circumstances is filed pursuant to Section 1229a(b)(5)(C)(i), see 13 F.4th at 996, then when is an *in absentia* order final if a petitioner has a basis to file a motion to reopen pursuant to Section 1229a(b)(5)(C)(ii) alleging lack of notice but has not filed that motion? Cf. id. at 1000 n.8 (noting that the petitioner never alleged that she lacked notice of her March 4, 2014 merits hearing, and that such an allegation "would allow a motion to reopen removal proceedings to be filed at any time" (citing 8 U.S.C. § 1229a(b)(5)(C)(i), (ii))). Although several district courts have applied Cui to recognize "that a noncitizen's *in absentia* removal order is not final for the purposes of Section 1231(a) while an appeal of the IJ's denial of the motion to reopen is still pending with the BIA," De Oliveira v. Wesling, No. 26-cv-308-JJM-AEM, 2026 WL 2065211, at *6 (D.R.I. July 17, 2026) (citing Bonilla v. Hermosillo, No. 2:25-cv-02196, 2025 WL 3237854, at *3 (W.D. Wash. Nov. 19, 2025); E.G.M. v. Scott, No. C26-0744-KKE, 2026

WL 914803, at *3 (W.D. Wash. Apr. 3, 2026); Li v. Albarran, No. 1:26-cv-00980-DAD-EFB, 2026 WL 970529, at *4 (E.D. Cal. Apr. 10, 2026)), this Court has not identified case law resolving the question of when an *in absentia* order is administratively final if a petitioner has a basis to file a motion to reopen pursuant to Section 1229a(b)(5)(C)(ii). This Court concludes that such orders are administratively final upon entry.

This Court's conclusion concerning finality follows from the way the INA and its implementing regulations interrelate. As the United States Supreme Court recognized recently, Section 1101(a)(47)(B)'s "statutory definition ties finality to agency review." Riley v. Bondi, 606 U.S. 259, 267 (2025). Title 8 United States Code Section 1101(a)(47)(B)(ii) provides that an order becomes final upon "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." In Cui, the Ninth Circuit identified that Section 1101(a)(47)(B)(ii) period as the 180-day window to file a motion to reopen under Section 1229a(b)(5)(C)(i), reasoning that, once the deadline to seek reopening before the IJ expires, the opportunity to obtain BIA review expires with it. See 13 F.4th at 996. Section 1229a(b)(5)(C)(ii), by contrast, imposes no deadline to file a motion to reopen. The lack of a deadline, however, does not mean that the finality of this type of *in absentia* order is postponed indefinitely. This Court concludes that the best reading of the INA and its implementing regulations is that Section 1229a(b)(5)(C)(ii) defers the finality issue to the regulation that specifically addresses *in absentia* orders and provides that such an order becomes final "immediately upon entry," 8 C.F.R. § 1241.1(e). Read this way, Cui and Section 1241.1(e) are complementary: Cui governs cases in which the 180-day deadline under Section 1229a(b)(5)(C)(i) applies, while Section 1241.1(e) governs cases under Section 1229a(b)(5)(C)(ii) in which the 180-day deadline does not.

A contrary reading would postpone the finality of an *in absentia* removal order indefinitely because of a noncitizen's right to file a Section 1229a(b)(5)(C)(ii) motion to reopen at any time. This would effectively excise portions of the INA and

produce absurd results. Cf. J.J. v. Ashlynn Mktg. Grp., Inc., Case No. 3:24-cv-00311-GPC-MSB, 2025 WL 2939532, at *5 (S.D. Cal. Oct. 16, 2025) ("courts seek to interpret statutes in a manner that avoids 'absurd results'" (quoting Tovar v. Sessions, 882 F.3d 895, 904 (9th Cir. 2018))). For instance, because the removal period does not begin until an order becomes administratively final, see 8 U.S.C. § 1231(a)(1)(B)(i), a noncitizen who alleged lack of notice but never moved to reopen would stand permanently outside the INA's removal period, thereby limiting the government's prerogative to enforce portions of the INA. Similarly, the INA provides that, if a noncitizen against whom an *in absentia* removal order is entered was also provided oral notice, then the noncitizen is also ineligible for certain forms of relief for ten years. See 8 U.S.C. § 1229a(b)(7). An interpretation that would indefinitely postpone the finality of an *in absentia* order would necessarily mean that Section 1229a(b)(7)'s ten-year bar for certain forms of relief would never run. Further, the INA limits the scope of judicial review. See J.E.F.M. v. Lynch, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Lest there be any question about the scope of judicial review, [8 U.S.C.] § 1252(b)(9) mandates that '[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order . . . .'" (some alterations in J.E.F.M.)). An *in absentia* order that is never final under Section 1229a(b)(5)(C)(ii) would curtail the judiciary's ability to review these types of orders almost entirely. It defies fundamental principles of statutory interpretation to read arguably vague language in the INA in such a way that would restrict the government's ability to enforce the country's immigration laws on one hand and, on the other hand, restricting the courts' ability to review the government's action when it is able to enforce those laws. See Rodriguez Vazquez, 183 F.4th at 1172 (quoting United States Forest Serv. v. Cowpasture River Pres. Ass'n, 590 U.S. 604, 621, 140 S. Ct. 1837, 207 L. Ed. 2d 186 (2020)).

The best reading of the INA and its implementing regulations, which accords with Cui, recognizes that Section 1241.1(e) governs *in absentia* removal orders that are rescindable under Section 1229a(b)(5)(C)(ii). Applying these principles, Petitioner's allegation that he did not receive notice of the January 8, 2026 removal hearing preserves his ability to seek rescission of the Removal Order at any time, see 8 U.S.C. § 1229a(b)(5)(C)(ii), but it does not defer the finality of the Removal Order in perpetuity, see 8 C.F.R. § 1241.1(e). This Court therefore concludes that the Removal Order became administratively final on January 8, 2026.

## II. Petitioner's *Zadvydas* Argument

Having determined that Petitioner's Removal Order was final on January 8, 2026, this Court now turns to Petitioner's argument that he is entitled to release under Zadvydas and Title 8 United States Code Section 1231. See Petition at PageID.7-12.

> After a removal order becomes final, ICE is authorized to detain a noncitizen, but not indefinitely. See Zadvydas v. Davis, 533 U.S. 678, 698-99, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); see also 8 U.S.C. § 1231(a). If, after the presumptively reasonable six-month period following entry of a final removal order, the individual at issue cannot be removed from the United States, the noncitizen is entitled to habeas relief if (i) he or she provides "good reason to believe" that "no significant likelihood" exists of "removal in the reasonably foreseeable future," and (ii) the habeas respondent fails to rebut this contention. See Zadvydas, 533 U.S. at 701, 121 S. Ct. 2491. . . .

Boza-Rosales v. Blanche, C26-0624 TSZ, 2026 WL 1412456, at *2 (W.D. Wash. May 15, 2026).

Respondents argue that the Petition is premature because "Petitioner[] has been detained for less than 90 days after his removal order became final." [Return at PageID.29.] Although not expressly stated in the Return, Respondents appear to argue that Petitioner's removal period began on the date he was detained. See Return at PageID.30 ("Petitioner's claim of prolonged detention would not be ripe until, at the

earliest, December 9, 2026" (citation omitted)). This Court, however, has concluded that the Removal Order became final on January 8, 2026. See *supra*. As relevant to Petitioner's Zadvydas argument, this Court finds that the removal period began on that date. See 8 U.S.C. § 1231(a)(1)(B)(i); Johnson v. Guzman Chavez, 594 U.S. 523, 534 (2021) ("[T]he removal period begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'"); see also Castro-Napoles v. Noem, Case No. 26-cv-03212-RFL, 2026 WL 1720963, at *2-3 (S.D. Cal. June 15, 2026) (rejecting the respondents' argument that "presumptively reasonable detention period under Zadvydas runs from the point at which detention begins, and not from the end of the removal period" because "Congress viewed six months as a presumptively reasonable amount of time for the government to effectuate removal, regardless of the non-citizen's detention status during that time"). Thus, pursuant to Zadvydas, this Court also concludes the presumptively reasonable period of detention to effectuate Petitioner's removal has passed. See 533 U.S. at 701.[5]

After a presumptively reasonable period of detention, if a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. Petitioner has identified good reason to believe there is no significant likelihood that he will be removed in the reasonably foreseeable future. For instance, he points to the fact that Respondents have not successfully removed him from

---

[5] Even if Respondents had expressly argued that Petitioner's removal period began on the date he was detained, and even if this Court found such an argument convincing, this Court would nevertheless conclude that the reasonable period of detention to effectuate Petitioner's removal has passed. See Machin-Rosal v. Mullin, Case No. 3:26-cv-02796-RBM-AHG, 2026 WL 2608769, at *2-3 (S.D. Cal. Sept. 3, 2026) (concluding, in an action with facts similar to the instant action, that the Zadvydas presumptively reasonable six-month period is rebuttable and that the petitioner rebutted the six-month presumption).

the United States. See Petition at PageID.3, PageID.11. Petitioner also points to a 2019 Office of Inspector General Report stating that Cuba has been classified as an "'uncooperative country'" based on its failure to provide travel documents on a timely basis, despite a 2017 repatriation agreement between the United States and Cuba. See id. at PageID.3-4, PageID.10.

The burden shifts to Respondents to "respond with evidence sufficient to rebut" Petitioner's showing that there is no significant likelihood that he will be removed in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701. Respondents have not met their burden. Respondents assert that, "[s]ince Petitioner's detention after his removal order became final, ICE has commenced efforts to execute Petitioner's removal to Cuba." [Return at PageID.28.] This assertion, however, is supported with nothing more than a conclusory statement that "DHS Counsel provided this information to Counsel for Respondents." See id. at PageID.28 n.3. Indeed, Respondents failed to even file a declaration from DHS's counsel. "[C]ourts in this District . . . have found that the Government failed to meet its burden on facts far more favorable to them than those present here." Machin-Rosal, 2026 WL 2608769, at *4 (citing cases).

## III. Ruling

In sum, Petitioner has established that the presumptively reasonable six-month period following entry of his Removal Order has passed. He has also established that his removal is not significantly likely in the reasonably foreseeable future. Respondents have not sufficiently rebutted that showing. Therefore, Petitioner's detention is no longer reasonable nor authorized by statute, and he is entitled to immediate release. Further, because the Return does not address Petitioner's argument regarding any attempt to remove him to a third country, see Petition at PageID.12-14, this Court construes Respondents' failure to address Petitioner's requests for an injunction

against removal to a third country as an indication that Respondents do not object to the award of the requested injunctive relief.[6]

**CONCLUSION**

For the foregoing reasons, Petitioner Diosvany Santos Garcia's Petition for Writ of Habeas Corpus, filed July 17, 2026, is GRANTED. Respondents are ORDERED to immediately release Petitioner from custody under the same conditions that existed immediately prior to Petitioner's detention on June 9, 2026. Further, Respondents are ORDERED to return Petitioner's property to him upon his release.

Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner under Title 8 United States Code Section 1231(a)(6) unless Respondents obtain the necessary travel documents for Petitioner's removal and follow all applicable statutory and regulatory procedures.

Respondents are also ENJOINED AND RESTRAINED from removing Petitioner to a country other than Cuba, *i.e.*, to a third country, unless the removal is preceded by written notice to both Petitioner's counsel and Petitioner, in a language that Petitioner can understand. Following notice, Petitioner must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for Convention Against Torture protection prior to removal. If Petitioner demonstrates a reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's immigration proceedings. If Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity,

---

[6] In light of this Court's determination that Petitioner is entitled to immediate release under Zadvydas, this Court need not address Petitioner's Fifth Amendment due process argument, [Petitioner's Suppl. at 3-5]. See Nw. Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 205 (25 009) ("normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case" (quotation marks and citation omitted)).

and a minimum of fifteen days, for Petitioner to seek reopening of his immigration proceedings.

The parties are ORDERED to file a joint status report by **September 25, 2026**, confirming that Petitioner has been released and that his property have been returned.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 17, 2026.

/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**DIOSVANY SANTOS GARCIA VS. MARKWAYNE MULLIN, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY ET AL.; CASE NO. 3:26-CV-04133 LEK-AHG; ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**